**PETROLEUM ANCHOR EQUIPMENT, INC., Petitioner,**

v.

**William D. TYRA, Senior et ux., Respondent.**

**No. B-69.**

Supreme Court of Texas.

Oct. 11, 1967.

Rehearing Denied Nov. 15, 1967.

Burford, Ryburn & Ford, Spencer C. Relyea, III, and John L. Estes, Dallas, for petitioner.

Baker, Jordan & Foreman, Russell M. Baker, Dallas, for respondent.

CALVERT, Chief Justice.

This is an action by Petroleum Anchor Equipment, Inc., a Mississippi corporation,

against William D. Tyra and wife to cancel certain written assignments from Petroleum to Luther S. Fite and from Fite to Tyra purporting to transfer title to an invented device for anchoring pipelines and to recover the title thereto. Following trial to a jury, the trial court rendered judgment that the plaintiff take nothing. The court of civil appeals has affirmed. 410 S.W.2d 238. We reverse the judgments of the courts below and render judgment for Petroleum. Earlier opinions of the court of civil appeals and this court on the question of necessary parties to the suit will be found in Petroleum Anchor Equipment, Inc. v. Tyra, Tex.Civ.App., 392 S.W.2d 873 (1965) and Sup., 406 S.W.2d 891 (1966).

Luther S. Fite invented a device designed to anchor pipelines in marshy land where they have a tendency to "float," and applied for letters patent thereto. While the application was pending, Fite, on April 7, 1962, executed and delivered a written instrument to Petroleum Anchor Equipment, Inc., by the terms of which instrument Fite sold, transferred and assigned to Petroleum his "entire right, title and interest in and to said invention and application and in and to Letters Patent of the United States which may be granted therefor." The assignment was recorded in the U.S. Patent Office on April 17, 1962.

On February 14, 1963, W. A. Moss, President of Petroleum, acting pursuant to a resolution purportedly adopted on January 8, 1963, by the board of directors of Petroleum, executed and delivered a written instrument to Fite by the terms of which all of Petroleum's right, title and interest in the patent rights to the anchor was sold and assigned to Fite. Thereafter, on March 4, Fite by written instrument sold and assigned his right, title and interest in the anchor, the application and letters patent to W. D. Tyra, Sr. The bill of sale from Petroleum to Fite and a copy of the purported resolution authorizing Moss to execute the same were recorded in the U. S. Patent Office on March 21, and the assign-

ment from Fite to Tyra was recorded on April 11.

On July 11, 1963, the board of directors of Petroleum rescinded the purported resolution of January 8, and thereafter on September 13 this suit was filed. Letters patent were granted September 24, 1963.

The primary basis on which Petroleum attacked the validity of the assignments was that the resolution which authorized Moss to sell and transfer the corporation's property was never passed by its board of directors, and that the assignment to Fite executed by Moss, purporting to act for Petroleum, was therefore void. The jury found in answer to special issue no. 1 that the board of directors did not pass the resolution, and in answer to special issue no. 2 that when the assignment was made to Fite by Moss the application for letters patent constituted substantially all of Petroleum's property and assets.

The defenses urged by the Tyras to the action were (1) want of consideration for the assignment from Fite to Petroleum; (2) that the assignment from Fite to Petroleum was in trust for Fite; and (3) that Petroleum was estopped to assert invalidity of the assignment from it to Fite because of its failure to take prompt action after it had or was charged with knowledge of the contents of the January 8 resolution. Although Fite testified that he assigned title to his invention to Petroleum to avoid claims of his creditors and with an agreement that Petroleum would reassign, no issues were submitted to the jury embracing the trust defense and no complaint has been made on appeal by the Tyras because of refusal of the trial court to submit such issues. The trust defense, if it be a defense, has thus gone out of the case except in so far as the evidence relating thereto may incidentally throw light on the defense of want of consideration. On that defense, the jury found in answer to special issue no. 3 that no money or thing of value passed from Petroleum to Fite for the transfer of the application for letters patent. In answer to

special issue no. 4, the jury found that after January 8, 1963 the board of directors of Petroleum was informed as to the contents of the January 8 resolution; and in answer to special issue no. 5 found that after learning of the contents of the resolution, Petroleum's board of directors "failed to act as ordinary prudent persons would have acted under the same or similar circumstances."

Petroleum objected to the court's charge because no special issue was submitted in connection with special issues nos. 4 and 5 inquiring whether Tyra had relied upon the matters therein inquired about. After the jury's verdict was received, Petroleum filed a motion to disregard the jury's answers to special issues nos. 3, 4 and 5 and render judgment for it on the remainder of the verdict. One of the grounds urged for disregarding the answer to special issue no. 3 was that the finding that no consideration passed to Fite was immaterial inasmuch as the assignment did not have to be supported by consideration to be effective and valid. One of the grounds for urging that the answers to special issues nos. 4 and 5 be disregarded was that there was neither evidence nor a finding by the jury that Tyra relied on the resolution to his detriment.

On appeal, Petroleum has not questioned that Tyra was a purchaser for value and in good faith from Fite; and no doubt because of the jury's answer to special issue no. 1, neither the Tyras nor the court of civil appeals has questioned Petroleum's right to the relief it seeks except as that right may be defeated by the jury's answers to special issues nos. 3, 4 and 5. As supporting the right, see Franco-Texan Land Co. v. McCormick, 85 Tex. 416, 23 S.W. 123 (1893). The questions to be decided are thus narrowed to whether Petroleum's right to recover is defeated by the jury's findings (1) of want of consideration for Fite's assignment to Petroleum, and (2) Petroleum's negligence in failing to act promptly after learning of the contents of the January 8 resolution. The court of

civil appeals held that Petroleum's right to recover was defeated by each of the findings. We hold that it is defeated by neither.

■ We agree with the holding of the court of civil appeals that there is evidence in the record to support the jury's finding that Fite received no consideration for his assignment to Petroleum; but we disagree with the court's holding that the finding renders the assignment ineffective or invalid.

The Tyras' position with reference to their defense of want of consideration is, and must be, this: Inasmuch as Fite received no consideration from Petroleum for his transfer on April 7, 1962, the written assignment never became effective and title never passed from but remained in Fite; and that Fite, therefore, was at all times the owner and holder of legal title which was transferred by him to Tyra by the assignment of March 4, 1963. The fatal flaw in the argument is that the finding of lack of consideration for the assignment to Petroleum does not lead to a legal conclusion that the assignment was void and never became effective.

■ According to Fite's own version of the facts, corroborated by the testimony of Moss, his reason for executing and delivering the assignment to Petroleum without consideration was for the purpose of putting his patent rights out of the reach of his creditors; and the transfer was made pursuant to a promise by Petroleum to hold the title in trust and reassign when the creditors were satisfied. In this factual context Petroleum argues that inasmuch as the agreement was executed rather than executory, the finding of want of consideration is immaterial and will not defeat Petroleum's right to relief. We agree. Assuming Fite's version of the facts to be correct, want of consideration for his assignment did not render the transfer of legal title ineffective or void. Consideration flowing to one who transfers property

to another in trust is not essential to effectiveness or validity of the transfer. Restatement (Second) of Trust § 29; Scott on Trusts § 29 (1939); Bogert, Trusts & Trustees, § 202 (2d ed. 1965); Birk v. First Wichita Nat'l Bank, 352 S.W.2d 781 (Tex.Civ.App.—Ft. Worth 1962, writ ref'd n. r. e.). Section 29 of the Restatement puts the rule in this positive language: "The owner of property can create a trust of the property by transferring it to another person in trust although there is no consideration other than the transfer of the property." Fite, or Tyra as his vendee, may have had a cause of action to cancel Fite's assignment to Petroleum for fraud or to impose a constructive trust if Petroleum refused to reassign on demand, but Tyra did not seek by cross-action in this case either to cancel the assignment or to impose a trust.

The court of civil appeals has held that the jury's answers to special issues nos. 4 and 5 will support the trial court's judgment denying to Petroleum the relief it seeks on the following grounds: (1) estoppel of Petroleum to assert invalidity of the assignments to Fite and Tyra; (2) ratification of the resolution and the assignments by the conduct of Petroleum; (3) since both Petroleum and Tyra are innocent parties and one must suffer by reason of the unauthorized assignment by Moss to Fite, the loss must fall on Petroleum because it was in a better position to prevent the loss. The evidence which was said by the court of civil appeals to support the jury's answers to issues 3 and 4, which answers, in turn, were held to support the court's legal conclusions, will be detailed.

Moss was president and Foreman was secretary of Petroleum. The board met on January 8. Moss testified that on February 14 he presented to Foreman a resolution, purporting on its face to have been adopted by the board at the January 8 meeting, conferring broad powers on him as president and general manager to deal with the property and affairs of Petroleum, and that the resolution was thereupon signed by Foreman. On the following day, February 15, Moss executed the assignment to Fite, and on March 4 Fite executed his assignment to Tyra. When the assignment from Moss to Fite was recorded in the Patent Office on March 21, a copy of the resolution bearing Foreman's signature was attached. The assignment from Fite to Tyra was recorded on April 11.

Petroleum's board of directors met on March 21 and again on March 29, but took no action to rescind the purported January 8 resolution. At a subsequent meeting on July 11, formal action was taken by the board to rescind the resolution. As heretofore noted, suit to cancel the assignments from Moss to Fite and from Fite to Tyra was filed on September 13.

Foreman testified that the resolution was not passed at the January 8 board meeting, was not shown to and signed by him on February 14, and that he had no knowledge of its existence until July 11. Truly, a director and past president of Petroleum, testified that he learned of the resolution for the first time on July 11. Foreman also testified that he first learned of the assignment from Moss to Fite early in June and of the assignment from Fite to Tyra on June 19.

■ Petroleum's right to relief cannot be defeated on the ground of estoppel. While a party may be estopped to assert his legal rights against another when his conduct misleads such other to his detriment, and the misleading conduct may consist of a failure to act when there is a duty to act, Johnson v. Sovereign Camp W. O. W., 125 Tex. 329, 83 S.W.2d 605 (1935); Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582 (1912), the party asserting an estoppel must establish that he relied on the misleading conduct to his detriment. Concord Oil Co. v. Alco Oil and Gas Corp., 387 S.W.2d 635 (Tex.Sup.1965); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952).

■ The only detriment suffered by Tyra was payment of consideration to Fite

for the assignment on March 4. Hence, while Petroleum's delay until July 11 in rescinding the resolution and until September 13 in filing suit to cancel the assignments may have had important significance to the jury in finding that Petroleum's directors failed to act as ordinary prudent persons would have acted after learning the contents of the resolution, those derelictions cannot be used to supply the element of detrimental reliance. They occurred long after Tyra purchased. However, the jury's answers to special issues nos. 4 and 5 that Petroleum learned of the contents of the resolution *"after January 8, 1963"* [1] and was thereafter negligent, must be interpreted, in the absence of objection by Petroleum to the form of the issue, as a finding in keeping with the testimony of Moss that Foreman, and therefore Petroleum, learned of the contents of the resolution on February 14, and that Petroleum was negligent in failing to take some action with respect to the resolution before March 4.

■ Assuming for purposes of this discussion that Petroleum owed a duty to prospective purchasers from Moss to take prompt action of some character with respect to the resolution, there is neither conclusive evidence nor a jury finding of detrimental reliance by Tyra on the failure of the board of directors so to do; and because of Petroleum's objection to the court's charge, there can be no deemed or presumed finding under Rule 279, Texas Rules of Civil Procedure, in support of the trial court's judgment.

The court of civil appeals has held as a matter of law that in purchasing from Fite on March 4, Tyra *relied on the resolution.* While technically the problem is rather one of *reliance on misleading conduct* of Petroleum's board of directors, we will consider the problem, as did the court of civil appeals, as though it were one of reliance on the resolution. So considered, the evidence does not establish conclusively that Tyra relied on the resolution in purchasing from Fite.

Although present at the trial, Tyra did not testify. We are not advised by him that he relied on the resolution or even that he had knowledge of its existence. Fite did testify, but he did *not* testify to having shown the resolution to Tyra or of having advised him of its existence. Tyra could not have had constructive notice of the resolution on March 4 because it was not recorded in the Patent Office until March 21 when it was recorded as an attachment to the assignment from Moss to Fite. There is no evidence showing when the attachment was made. Inasmuch as the resolution was attached to the assignment to Fite when that assignment was recorded perhaps an inference could be drawn that the attachment was made when Moss assigned to Fite on February 15, but there is no testimony by Fite or from any other source that Fite displayed to Tyra the assignment from Moss. Not only does the evidence fail to show conclusively that Tyra relied on the resolution in making his purchase from Fite, but it is doubtful that it is of sufficient probative force to raise a fact issue of reliance.

■■ Petroleum's right to relief cannot be defeated on the ground that its conduct constituted a ratification of the resolution and the subsequent assignments. Ratification of an unauthorized act may be express or it may be implied from a course of conduct, Wm. Cameron & Co. v. Gibson, 278 S.W. 522 (Tex.Civ.App.—Austin 1925, writ ref'd); Knowles v. Northern Texas Traction Co., 121 S.W. 232 (Tex.Civ.App.—1909, writ dis'm); but whether it be express or implied, ratification is a plea in avoidance and thus is an affirmative defense which must be pleaded. Rule 94, Texas Rules of Civil Procedure. The Tyras did *not* plead ratification and there is nothing in the record before us indicating that trial of the issue was by consent.

1. Emphasis the writer's unless otherwise indicated.

In Reid v. Associated Employers Lloyds, 164 S.W.2d 584, 585 (Tex.Civ.App.—Ft. Worth 1942, writ ref'd), the court stated the purpose of Rule 94 as follows:

"That purpose is to require the defendant to announce in his pleadings what his defense will be, if it includes any of the matters referred to in the Rule, and to give plaintiff the opportunity of knowing what character of proof he may need to meet the defenses pleaded."

The record before us is proof evident of the soundness of the quoted observation. The Tyras pleaded estoppel but not ratification. When special issues nos. 4 and 5 were submitted to the jury, Petroleum objected to them on the ground that they did not constitute an adequate submission of the defense of estoppel. There is nothing in the record to suggest that the issues were intended to submit a defense of ratification; and yet, on appeal, when it was too late for Petroleum to object to adequacy of such issues to submit a defense of ratification, the Tyras urged, and the court of civil appeals held, that the jury's answers to the issues would support a legal conclusion that Petroleum by its conduct had impliedly ratified the resolution and the assignments. We hold that ratification, like estoppel, is an affirmative defense which, in the absence of trial by consent, is waived if not affirmatively pleaded.

Relief has often been denied to one who seeks cancellation of an instrument of conveyance or the recovery of property from a good faith purchaser when by his own conduct he is responsible for a situation in which either he or the purchaser must suffer loss. Brook v. Moreland, 32 Tex. 380 (1869); West v. First Baptist Church f Taft, 123 Tex. 388, 71 S.W.2d 1090 (1934); Sackenruether v. Winston, 137 S.W.2d 93 (Tex.Civ.App.—Galveston 1940, writ ref'd); Forman v. Irby, 115 S.W.2d 1229 (Tex.Civ.App.—Waco 1938, writ ref'd); Parma v. First Nat'l Bank of Cameron, 63 S.W.2d 692 (Tex.Comm'n App.1933). However, we do not agree with the implied holding of the court of civil appeals that the burden is on one seeking such relief and being otherwise entitled thereto, to prove that the purchaser was in a better position to prevent the loss; and neither do we agree with its holding that the facts in this case establish that Petroleum was responsible for the situation which will cause loss to the Tyras if Petroleum is awarded the relief it seeks. In reaching its conclusion that the rule stated may be applied to deny relief to Petroleum, the court of civil appeals said that it "had within its possession knowledge of all the facts at a time when it could, by prompt disavowal, have acted to undo the alleged wrongdoings between Moss and Fite. This the corporation did not do but remained silent for an inordinate period of time so that it may not now be heard to seek equitable relief."

As we have stated in our discussion of the defense of estoppel, any loss which the Tyras may suffer must result from the purchase of the patent rights from Fite on March 4. At that time Petroleum had known of the existence and the contents of the resolution for a period of less than three weeks. The resolution did not expressly confer authority upon Moss to sell the patent rights; it conferred authority to sell corporate property in broad and general language only. There is no evidence in the record that Foreman or any other officer or director had reason to know or to suspect that Moss might exercise the general authority given him by the resolution to sell and dispose of the patent rights which constituted substantially all of the assets and property of the corporation. Neither is there evidence in the record that any officer or director of Petroleum knew of the assignment by Moss to Fite until long after Tyra had purchased from Fite. On the record before us, we hold that there is no evidence to support a conclusion that Petroleum was negligent in failing to rescind or disavow the resolution before Tyra purchased the patent rights. Moreover, there is no evidence that Petroleum was responsible for Tyra's loss by its failure to

rescind or disavow the resolution. Even were we to assume that Tyra knew of the resolution when he purchased from Fite, we cannot assume that he would have known of corporate action rescinding and disavowing it.

The judgments of the court of civil appeals and trial court are reversed and judgment is here rendered that Petroleum have the relief for which it prayed.